345 So.2d 703 (1977)
In the Interest of Linda Faye HUTCHINS, a Child.
No. 48306.
Supreme Court of Florida.
March 24, 1977.
*704 Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski and Charles W. Musgrove, Asst. Attys. Gen., for appellant.
Virgil Q. Mayo, Public Defender, and Lewis M. Peacock, Asst. Public Defender, for appellee.
KARL, Justice.
This is a direct appeal from an order of the Circuit Court in and for Calhoun County declaring Chapter 75-48, Section 15(11), Laws of Florida, relating to ungovernable children, to be unconstitutional. We have jurisdiction under Article V, Section 3(b)(1), Florida Constitution.
Linda Faye Hutchins, the appellee, was abandoned by her parents when she was twelve years old. By Order of Commitment to Fosterage entered August 30, 1972, she was placed in the care, custody and supervision of the Division of Family Services as a dependent child. On August 11, 1975, an order was entered, pursuant to the statute before us, finding that Linda Faye, then age fifteen, continued to be a dependent child and that she was ungovernable due to her uncontrollable behavior. Two weeks later, a petition was filed seeking a second adjudication of ungovernability. At this time, counsel was appointed by the court to represent her, and he promptly filed motions attacking the statute and the validity of the first adjudication of ungovernability.
The statute in question, Chapter 75-48, Section 15(11), now appears as Section 39.01(11), Florida Statutes, and provides:
"`Ungovernable child' means a child who persistently disobeys the reasonable and lawful demands of his parents or other legal custodians and is beyond their control. For the purposes of this act, the first time a child is adjudicated as ungovernable, he may be defined and treated as a dependent child, and all the provisions of this act relating to dependency shall be applicable. For the second and subsequent adjudications for ungovernability, the child may be defined and treated as a delinquent child, and all the provisions of this act relating to delinquency shall be applicable. If necessary the court may order placement of the child in secure shelter care pending disposition."
In his order granting the motion to dismiss, the trial judge found that Section 39.01(11) is vague and indefinite in its entirety *705 and that the failure of the statute to include provisions for counsel in the adjudicatory hearings on ungovernability constituted a failure to accord procedural due process as required. The order held the statute to be unconstitutional and invalidated the earlier ungovernability adjudication.
The first question for our determination is the constitutionality vel non of Section 39.01(11), Florida Statutes.
Although the Florida Juvenile Law, Chapter 39, Florida Statutes, is not a penal statute,[1] a child may be found to be delinquent under its provisions and committed until the age of twenty-one.[2] Such a statute, when challenged for vagueness, should be subjected to the same test that is applied to penal laws.
This test was well defined in this court's decision in State v. Llopis, 257 So.2d 17 (Fla. 1971), and reiterated most recently in State v. Wershow, et al., 343 So.2d 605 (Fla.) filed February 25, 1977, as follows:
"When exercising its power to declare an offense punishable, the Legislature must inform our citizens with reasonable precision what acts are prohibited. There must be provided an ascertainable standard of guilt, a barometer of conduct must be established, so that no person will be forced to act at his peril. Cramp v. Board of Public Instruction of Orange County, Florida, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947); State [ex rel. Lee] v. Buchanan, 191 So.2d 33, 336 (Fla. 1966)."
Before a person subject to the act can be adjudicated an ungovernable child and thereafter be defined and treated as a dependent child, he must have persistently disobeyed the reasonable and lawful demands of his parents or custodians and be beyond their control. There must be a second or subsequent such adjudication before the definition and treatment of the ungovernable child equates with delinquency. We find the language of that portion of the statute to be sufficiently definite to withstand the attack of vagueness.
Furthermore, we do not agree with the trial judge's conclusion that the statute is fatally defective for failure to include provisions requiring counsel for every juvenile alleged to be an ungovernable child. The right to counsel in delinquency proceedings is required by the Fourteenth Amendment of the United States Constitution. In re Gault, supra. That right accrues to the child regardless of the fact that it may not be written into the statute, and therefore, absence of a statutory provision requiring counsel in such proceedings does not negate the validity of the questioned statute.
Since we conclude that Section 39.01(11), Florida Statutes, is constitutional, we have for disposition the question of whether a juvenile alleged to be an ungovernable child is entitled to counsel at every hearing delineated in Section 39.01(11), Florida Statutes.
The United States Supreme Court, in In re Gault, supra, set forth the procedure required to be followed in adjudicatory proceedings relative to the right of the juvenile to counsel, as follows:
"[T]he Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child."
*706 Section 39.01(12) defines a delinquent child as "a child who commits a violation of law, regardless of where the violation occurs, except the child who commits a juvenile traffic offense and whose case has not been transferred to the circuit court by the court having jurisdiction."
A child becomes a delinquent child as a result of a hearing[3] and adjudication.[4] Thereafter, the court has the power to make disposition of the matter in various ways,[5] including a commitment to the Division of Youth Services until he reaches the age of twenty-one.[6] In a hearing on a petition in which it is alleged that the child is delinquent, the evidence must establish the status of the child beyond a reasonable doubt.[7] Any child alleged to be a delinquent child under Chapter 39, Florida Statutes, is entitled to the due process protection specified in In re Gault, supra. Cf. State v. Steinhauer, 216 So.2d 214 (Fla. 1968).
Section 39.01(11) provides that, for the second and subsequent adjudications for ungovernability, the child may be defined and treated as a delinquent child and all provisions of the act relating to delinquency shall be applicable. That portion of the act establishes an additional basis for a child to acquire the status of delinquent child. Delinquency by the process of adjudications of ungovernability has the same effect on the child and his liberty as any other procedure leading to delinquency.
The parties agree that, at a second or subsequent adjudicatory hearing on ungovernability, the juvenile has the right to counsel since the adjudication may result in the child being defined and treated as a delinquent. But, it is argued, the first adjudication may only result in dependency status, and therefore, the right to counsel need not be accorded at that time.
This court has held that the federal constitution does not require counsel in every dependency case and that whether the standards of due process in delinquency proceedings must be applied will depend upon the relevant circumstances in each case. Potvin v. Keller, 313 So.2d 703 (Fla. 1975).
Under the provisions of Chapter 39, Florida Statutes, the status of dependency may be established by a preponderance of evidence,[8] the powers of the court and the Division of Family Services are limited,[9] and only delinquent children may be committed to the Division of Youth Services for custody, care, training and treatment.[10]
The first hearing on ungovernability is not necessarily a first step in the adjudication of delinquency. The hearing and the resulting care, custody or supervision by the Division of Family Services may correct any existing problems the child may have and be the last of the child's experiences with the juvenile authorities. In such cases, the constitutional right to counsel is not mandatory. Potvin v. Keller, supra; Cleaver v. Wilcox, 499 F.2d 940 (9th Cir.1974).
If, however, the first ungovernability adjudication is to be used in a subsequent proceeding in which the child's status may change from dependency to delinquency because of two or more adjudications of ungovernability, the first such adjudicatory hearing is a critical first step in the delinquency determination and the child is entitled to all due process rights at each step in the procedure.
Determining that a juvenile was placed in jeopardy at an adjudicatory hearing, the object of which was to determine whether he had committed certain proscribed acts, the United States Supreme Court, in Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), said:

*707 "We therefore conclude that respondent was put in jeopardy at the adjudicatory hearing. Jeopardy attached when respondent was `put to trial before the trier of the facts,' ibid., that is, when the Juvenile Court, as the trier of the facts, began to hear evidence. See Serfass v. United States, 420 U.S. [377] at 388, 95 S.Ct. 1055, [43 L.Ed.2d 265.]"
We conclude that it is constitutionally impermissible to base an adjudication of ungovernability for the second time on a previously conducted hearing in which the child was not instructed as to his right to counsel or provided counsel if an indigent.
We reject the argument that such a requirement will convert all of the proceedings to determine ungovernability into criminal type proceedings with both state attorney and defense counsel present in an adversary atmosphere. If the appropriate authority believes that the ungovernability hearing will suffice, there is no reason why it cannot be held as any other dependency proceeding. But if the conduct of a child is such that there is doubt about the effectiveness of the proceeding and that such proceeding will likely mature into a delinquency proceeding, the child must be given the opportunity to have counsel. If this right is not afforded the juvenile, the first adjudication may not be used in the delinquency hearing.
In the case sub judice, Linda Faye Hutchins has been a dependent child since 1972. Three years after being placed in that status and while still within the jurisdiction of the court, she was the subject of a detention order. Almost immediately, a petition was filed alleging that she was an ungovernable child. The petition described a consistent course of conduct which resulted in several changes in her foster homes. Two weeks later, the petition for a second adjudication of ungovernability was filed, and it included the statement that "Division of Family Services has no foster home able to cope with Linda Faye Hutchins' problem." The request was that Linda Faye be adjudicated for a second time and be placed under the Division of Youth Services. There she would be defined and treated as a delinquent.
It is apparent from the petition and the supporting material that, when the first petition for adjudication of ungovernability was filed, the officials involved had reason to believe that further proceedings might be necessary. Had Linda Faye been provided counsel in that critical first step as well as at her second hearing, her rights, in that respect, would not have been violated. The proceedings were held without according her due process in the first hearing, which is not objectionable per se, but it forecloses the use of that first adjudicatory hearing as the basis for the delinquency proceedings.
The order of the trial judge in invalidating Linda Faye's first hearing on ungovernability cannot be affirmed because the hearing was valid for the purpose of placing her in the dependency status. However, if Linda Faye Hutchins is to be adjudicated a delinquent child as a result of being twice adjudicated an ungovernable child, the proceedings must conform to the procedural mandate announced herein.
We have considered whether a child's Fourteenth Amendment rights would be protected if all of the facts upon which each of the ungovernability adjudications was based were proved de novo and beyond a reasonable doubt at the second or subsequent ungovernability hearings. Such a procedure would not provide adequate safeguards. The fact of the first adjudication would remain an essential element, and it would have been settled without the required protection and by a simple preponderance of the evidence.
For the foregoing reasons, we hold that Section 39.01(11), Florida Statutes, is constitutional and that the adjudication of Linda Faye Hutchins as an ungovernable child on August 11, 1975, was a valid proceeding for the purpose of placing her in the status of a dependent child.
Accordingly, the order of the trial judge is reversed, and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
*708 OVERTON, C.J., and ADKINS and BOYD, JJ., concur.
SUNDBERG, J., concurs in part and dissents in part with an opinion, with which ENGLAND and HATCHETT, JJ., concur.
SUNDBERG, Justice, concurring in part, dissenting in part.
I concur in the result reached by the majority with respect to the constitutionality of Section 39.01(11), Florida Statutes (1975). I also agree that there was no necessity for the juvenile to be represented by counsel at the hearing on "ungovernability" held on August 11, 1975. I dissent from the conclusion that counsel will or will not be required at a first hearing for adjudication of ungovernability based upon whether the juvenile authorities believe a second hearing will be necessary. In the first place, I believe the test is unworkable. In addition, I do not believe the statute comprehends the procedure assumed by the majority.
The majority seems to say that the first hearing is a "critical first step" any time there is the necessity for a second hearing on ungovernability. But how can we expect juvenile authorities to know when the first hearing will remedy the situation without the necessity for further proceedings and when it will not? Without clairvoyance they cannot make this determination. The rule announced by the majority places a premium upon hindsight, which, concededly, is always 20-20. The majority concedes that the first hearing may very well "correct any existing problems the child may have and be the last of the child's experiences with the juvenile authorities." But how can one know going in? I suggest one cannot. Therefore, the rule announced in the majority opinion will lead inexorably to a full blown adversary hearing at each initial effort to adjudicate ungovernability. This result is not only an unwarranted and wasteful expenditure of judicial resources, it is not in the best interests of the child. I am absolutely convinced that initial proceedings for adjudication of ungovernability should be carried on in an informal atmosphere calculated to rehabilitate the juvenile without all the trappings of adversary judicial proceedings.
I submit that the correct and more practical construction of Section 39.01(11), Florida Statutes (1975), is readily discernible from a plain reading of the statute. After a definition of "dependent child"[1] and before a definition of "delinquent child"[2] is set forth, Section 39.01(11), Florida Statutes (1975), defines an "ungovernable child." In addition to defining the conduct which constitutes ungovernability, this section outlines certain consequences which may flow from an adjudication of ungovernability. Upon the first adjudication of ungovernability, the child "may be defined and treated as a dependent child, and all of the provisions of this act relating to dependency shall be applicable." Upon the second or subsequent such adjudication, the child "may be defined and treated as a delinquent child, and all the provisions of this act relating to delinquency shall be applicable." (Emphasis ours)
It is clear that neither an initial nor a subsequent adjudication of ungovernability constitutes an adjudication of dependency or delinquency. To "define and treat" one as a dependent or delinquent child must mean something different from adjudication of that status. I suggest that it means simply that after such definition by the court, the child becomes a potential candidate for proceedings which can result in an adjudication of dependency or delinquency pursuant to Sections 39.05-39.11, Florida Statutes (1975). This construction is reinforced by the phrases in Section 39.01(11) "and all the provisions of this act [§§ 39.05-39.11, Fla. Stat.] relating to [dependency] [delinquency] shall be applicable." In short, an adjudication of ungovernability may form the basis for a petition under Section 39.05, Florida Statutes (1975), for dependency absent any of the elements recited in Section 39.01(10), Florida Statutes (1975). *709 But the proceedings for adjudication of dependency must be in accordance with the provisions of Sections 39.05-39.11, Florida Statutes (1975). The same is true with respect to proceedings for adjudication of delinquency after two or more adjudications of ungovernability. In each instance, the procedural safeguards prescribed by Chapter 39, Florida Statutes (1975), as amplified by decisional law, will apply. In such proceedings the adjudication or adjudications of ungovernability merely provide a predicate for a petition under Section 39.05, Florida Statutes (1975). At any such hearing on a petition for adjudication of dependency or delinquency, proof of the former adjudication or adjudications of ungovernability will provide prima facie evidence of such fact. However, because I deem representation by counsel at ungovernability hearings not to be required, the juvenile shall be entitled to present evidence to rebut any of the facts upon which the ungovernability adjudication was based. Whereupon the burden will be upon the petitioner to prove de novo by the requisite quantum of proof the facts justifying the adjudication of ungovernability. Expressed another way, the adjudication of ungovernability will be open to collateral attack at any hearing upon a petition filed pursuant to Section 39.05, Florida Statutes.
I submit that the foregoing interpretation of Section 39.01(11), Florida Statutes, obviates the critical first step assertion of the appellee and fully comports with the dictates of In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).
ENGLAND and HATCHETT, JJ., concur.
NOTES
[1] Section 39.001, Florida Statutes, provides:

"Purposes.  The purposes of this chapter are:
(1) To protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of children who violate the laws;... ."
See also Section 39.10(5), Florida Statutes, In re Gault, 387 U.S. 1 at 14 and 15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and State v. D.H., a juvenile, et al., Fla., 340 So.2d 1163 (1976).
[2] Section 39.11(2)(c), Florida Statutes.
[3] Section 39.09, Florida Statutes.
[4] Section 39.10, Florida Statutes.
[5] Section 39.11(2), Florida Statutes.
[6] Section 39.11(2)(c), Florida Statutes.
[7] Section 39.09(1)(b), Florida Statutes.
[8] Section 39.09(1), Florida Statutes.
[9] Section 39.11, Florida Statutes.
[10] Ibid.
[1] § 39.01(10), Fla. Stat. (1975).
[2] § 39.01(12), Fla. Stat. (1975).